IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-00469-FL

**Human Rights Defense Center**,

Plaintiff,

v.

**Todd Ishee,** et al.,

Defendants.

**Order**

Plaintiff Human Rights Defense Council seeks to recover attorneys' fees and costs incurred because of Defendant North Carolina Department of Adult Corrections'[1] failure to adequately prepare their designee for a Rule 30(b)(6) deposition and the conduct of defense counsel during that deposition.[2] D.E. 70, 73. Defendants challenge the hourly rate sought by HRDC's attorneys and the number of hours those attorneys seek compensation for.

HRDC is entitled to recover almost all of the amount it seeks. The court will apply the hourly rate sought by HRDC because it demonstrated that it is appropriate to apply Washington, D.C. market rates instead of market rates for eastern North Carolina. And the court will allow HRDC to recover for most of the hours included in its fee petition, except for a portion of the hours spent on the fee petition itself, which the court considers excessive. Thus, the North Carolina Department of Public Safety must pay HRDC $45,846 as a sanction for its deposition-related conduct.

---

[1] Originally, the North Carolina Department of Public Safety was the named defendant. But due a change in North Carolina law, the North Carolina Department of Adult Corrections is now the real party in interest and assumed all of NCDPS's legal obligations. *See* Consent Motion to Substitute Party, D.E. 61. For clarity's sake, the court will refer to NCDAC throughout this order, even if the actions were undertaken by NCDPS.
[2] The court previously granted HRDC's motion to compel and its request for sanctions. D.E. 47, 64, 65.

## I. Background

This case arises out of HRDC's claims that NCDAC and several state employees violated its rights under the First and Fourteenth Amendments. Its claims stem from NCDAC's alleged practice of censoring magazines and other materials that HRDC wishes to send to prisoners in North Carolina's prisons. Am. Compl. ¶ 1, D.E. 35. HRDC also claims that the Department is violating its due process rights by not providing a mechanism through which it can challenge the Department's decision to censor the publications. *Id.* ¶ 2.

In October 2022, HRDC's attorneys emailed NCDAC's counsel to discuss scheduling the Department's Rule 30(b)(6) deposition. Order, D.E. 64 at 2. It proposed conducting the deposition the next month and listed potential deposition topics. *Id.*

Four days later, NCDAC's counsel responded that the Department was unavailable on the proposed date and would not be available until after the Thanksgiving holiday. *Id.* That same day, HRDC asked about NCDAC's counsel's availability for three dates after Thanksgiving. *Id.*

After more than a week with no response, HRDC noticed the deposition for late November 2022. *Id.* The notice included 22 topics. *Id.* at 2–3. HRDC later served an amended notice changing the deposition date to mid-December 2022, but kept the same topics. *Id.* at 3.

NCDAC designated Loris Sutton, its Deputy Secretary for Internal Affairs and Intelligence Operations, to testify on its behalf.[3] *Id.* Sutton prepared for her deposition by meeting with counsel before the deposition, exchanging emails, and reviewing the policy governing the dissemination of written materials to prisoners. *Id.* But she reviewed no other documents to prepare for the deposition. *Id.*

---

[3] NCDAC apparently also designated a second individual to testify on its behalf. Mem. in Supp. at 2 n.1, D.E. 48. HRDC did not challenge that individual's testimony and preparedness in its motion to compel.

Sutton's preparation left her without information on many topics which HRDC wished to explore. *Id.* Sutton was largely unable to explain why NCDAC denied various allegations. *Id.* Sutton had not reviewed interrogatory responses. *Id.* And she was unfamiliar with the Department's actions to implement a consent decree entered against it in another federal case. All these issues were included as topics in the Rule 30(b)(6) notice. *Id.*

Sutton's lack of information extended to more substantive matters as well. *Id.* at 4. Sutton had not reviewed the rejected publications. *Id.* So she could not testify about the basis for the Department's decisions. *Id.* And Sutton could not explain why NCDAC included HRDC on its Master List of Disapproved Publications. *Id.* Nor could Sutton explain why HRDC had been banned from distributing materials for nearly ten years, although NCDAC policy states that publishers should only be on the Master List for a term of twelve months. *Id.* What's more, Sutton had not reviewed HRDC's appeals of NCDAC's decision to reject its publications nor the Department's responses to them. *Id.* These, too, were designated topics.

Compounding the issues caused by Sutton's lack of preparation were baseless objections and improper instructions not to answer from NCDAC's attorney, Shelby Boykin. *Id.* at 4–5.

After the deposition, HRDC asked the court to compel NCDAC to produce an adequately prepared designee, overrule Boykin's objections and instructions not to answer, and require the Department to pay the fees and costs associated with a second deposition. Mot. to Compel, D.E. 47. HRDC's motion alleged that Sutton could not testify about 13 of the 22 designated topics, either because she was unprepared or because Boykin instructed her not to answer. *Id.* NCDAC failed to timely respond to the motion to compel, despite receiving an extension of time. D.E. 64 at 6.

3

The court granted HRDC's motion. D.E. 64 at 7. It found that Sutton's preparation and Boykin's conduct violated the Federal Rules. *Id.* Sutton was unprepared to testify about most of the topics marked for discussion. *Id.* And Boykin's objections and instructions not to answer lacked a legal basis. *Id.* So the court directed NCDAC to identify a new designee for a second deposition and overruled the Department's objections. *Id.* The court also imposed sanctions, concluding that producing an unprepared designee constituted a failure to appear. *Id.*

The parties conducted a second Rule 30(b)(6) deposition on April 25, 2023. But HRDC again maintained that NCDAC had not adequately prepared the deponent on noticed topics. So the parties agreed to secure the information through written interrogatories.

HRDC filed affidavits outlining its fees and costs associated with its motion to compel. D.E. 20. D.E. 70–1, 70–2, 73–1, 73–2. Defendants challenge to the hours claimed by HRDC's attorneys and the hourly rate they ask the court to apply to its analysis. D.E. 72. HRDC has replied in support of its request. D.E. 74.

## II. Discussion

The court previously found that NCDAC's failure to adequately prepare its designee amounted to a failure to attend its Rule 30(b)(6) deposition. In that circumstance, the Federal Rules make it mandatory for the court to "require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure[.]"[4] Fed. R. Civ. P. 37(d)(3).

In its earlier order, the court set out the types of fees and costs NCDAC would be responsible for. D.E. 64 at 16. HRDC seeks to recover those items as well as the attorneys' fees

---

[4] There are certain exceptions to this rule, *see id.*, but none of them apply here. Fed. R. Civ. P. 37(d)(3).

associated with preparing its fee petition. Before awarding HRDC the amount it seeks the court must review the request to ensure that it complies with the applicable law on fee awards.

### A. Standard for an Award of Attorneys' Fees

Courts in the Fourth Circuit employ a three-step process to calculate an attorney fee award. The first step involves determining a "lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson* v. *Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom* v. *The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). Twelve factors play into the reasonableness of the hours expended and the rate charged:

- The time and labor expended.

- The novelty and difficulty of the questions raised.

- The skill required to properly perform the legal services rendered.

- The attorney's opportunity costs in pursuing the case.

- The customary fee for similar work.

- The attorney's expectations at the start of litigation.

- The time limitations imposed by the client or circumstances.

- The amount in controversy and the results obtained.

- The experience, reputation, and ability of the attorney.

- The undesirability of the case within the legal community in which the suit arose.

- The nature and length of the professional relationship between attorney and client.

- Fee awards in similar cases.

*Id*. at 243–44 (quoting *Barber* v. *Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). There may be cases, however, where not all factors are relevant. In those cases, the court "is under no

obligation to go through the inquiry of those factors that do not fit." *In re A.H. Robins Co., Inc.*, 86 F.3d 364, 376 (4th Cir. 1996).

After determining the lodestar figure, the court should consider whether to reduce that figure based on the results the attorney obtained for her client. If a fee request includes "fees for hours spent on unsuccessful claims unrelated to successful ones" the court should subtract those fees from the lodestar figure. *Johnson* v. *City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002). Then the court should "award[] some percentage of the remaining amount, depending on the degree of success enjoyed by the" applicant. *Id*.

With this framework in mind, the court turns to its assessment of HRDC's fee request.

### B.    Lodestar Calculation

As noted above, the court begins its assessment of a fee request by calculating the lodestar figure. This requires a determination of an appropriate hourly rate and the number of hours the party may reasonably include in its fee request. Here, it is appropriate to apply an hourly rate based on the Washington, D.C. legal market, because HRDC has shown that there were no local attorneys who were willing and able to take this case. It is also appropriate for HRDC to recover for most of the work included in its fee petition. The only portion subject to reduction is the hours spent on drafting the fee petition because that portion of the fees requested exceeds the amount typically found to be reasonable by courts in the Fourth Circuit..

### 1.    Reasonable Hourly Rate

The court begins by considering the reasonable hourly rate to apply in the lodestar calculation. The court should use an hourly rate that reflects "the prevailing market rates in the relevant community for the type of work for which [a party] seeks an award." *Plyer* v. *Evatt,* 902 F.2d 273, 277 (4th Cir. 1990). The relevant community will typically be the "community in which

6

the court sits[.]" *Rum Creek Coal Sales, Inc.* v. *Caperton*, 31 F.3d 169, 179 (4th Cir. 1994). But the court may look to market rates elsewhere if there are no local attorneys with the relevant skills because of "'the complexity and the specialized nature of a case' . . . and the party choosing the attorney from elsewhere acted reasonably in making the choice." *Id.* (quoting *Nat'l Wildlife Fed.* v. *Hanson*, 859 F.2d 313 (4th Cir. 1988)).

Once the court has determined the relevant community, it must then determine the prevailing market rate in that community for the type of work involved in the fee request. The chosen rate should reflect "what attorneys earn from paying clients for similar services in similar circumstances[.]" *Depaoli* v. *Vacation Sales Assocs., LLC*, 489 F.3d 615, 622 (4th Cir. 2007). The party seeking the fee award must provide "specific evidence of the 'prevailing market rates in the relevant community' for the type of work for which he seeks an award." *Spell* v. *McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987) (quoting *Blum* v. *Stenson*, 465 U.S. 886, 895 (1984)). A party meets this burden by supplying the court with "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson*, 560 F.3d at 245.

a)      **Relevant Community**

The parties dispute what the relevant community is here. In evaluating the prevailing market rate, the first place to look is the community in which the court sits. *Rum Creek Coal Sales,* 31 F.3d at 178. But the court may consider rates charged by attorneys in other communities, when "the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally," and the party choosing the attorney from elsewhere acted reasonably in making the choice. *Id.* (citing *Nat'l Wildlife Fed.*, 859 F.2d at 317).

7

This court sits in Raleigh, North Carolina. But HRDC contends that Washington, D.C., where Wiley Rein maintains its office, is the relevant community.

To support its position, HRDC claims that it had to look outside of eastern North Carolina to locate suitable representation. It asserts that it could not identify a local attorney who met three necessary criteria. First, the attorney required proficiency in First Amendment law in prison settings. Second, the attorney must be willing to represent a nonprofit, potentially foregoing compensation. And third, the firm needed to support the costs of the litigation.

HRDC explained the efforts it made to find someone to represent it in the local market who met this criteria. To begin with, it contacted Emancipate NC, a local nonprofit involved in criminal-justice-related issues.[5] Mem. in Supp. at 13, D.E. 71. But Emancipate NC does not focus on First Amendment censorship. *Id.* Nor could it financially support the sustained litigation expected. *Id.*

It then turned to local law firms as potential counsel. D.E. 74–1 ¶¶ 13–16. To begin with, HRDC contends that there are few, if any, North Carolina firms with the expertise and resources to represent it in cases asserting constitutional violations against prisons. *Id.* ¶ 15. And those firms it contacted either had conflicts of interest or lacked the resources to take on the case. *Id.* ¶¶13, 14. So HRDC contends that there were no local attorneys available who had the experience, willingness, and financial means to represent HRDC.

Defendants dispute this contention. D.E. 72 at 3. They identified four firms with local offices—Fox Rothschild, Brooks Pierce, Alston & Bird, and McGuire Woods—that handle pro bono prison litigation. *Id.* While they note that multiple attorneys from Fox Rothschild "recently" represented an inmate in a case, the Defendants do not explain the subject matter of that case or even provide the court with any way to locate it. Similarly, while they claim the other firms "have

---

[5] Emancipate NC "nonprofit organization dedicated to ending mass incarceration and structural racism in the legal system." *Irving* v. *City of Raleigh*, No. 5:22-CV-68-BO, 2022 WL 17159105, at *3 (E.D.N.C. Nov. 22, 2022).

8

pro bono prison litigation experience in North Carolina[,]" they failed to explain the nature of the cases those firms were part of or any identifying information about those cases. By failing to provide any substantive information the types of cases handled by these firms, Defendants have failed to rebut HRDC's claim that there was a lack of adequate counsel in the local market.

And even if local firms are willing to handle prisoner litigation in some cases, the record fails to establish that there are local firms who could handle this particular litigation. For example, a partner in Brooks Pierce's Greensboro office provided an affidavit explaining that the firm provides limited pro bono work on inmate litigation, usually after a case advances past summary judgment. D.E. 74–2 ¶ 8. But the firm does not work on prison censorship matters. *Id.* ¶ 9.

In similar circumstances, this court and the Fourth Circuit have found it appropriate to apply out-of-market rates to a fee petition. The Fourth Circuit's decision in *National Wildlife Federation* v. *Hanson* provides an example. 859 F.2d 313 (4th Cir. 1988). In that case, the United States challenged this court's decision to apply rates charged by attorneys in Washington, D.C. to a fee petition in a Clean Water Act case. The appellate court upheld this court's decision based on the uncontroverted evidence from the plaintiff that "1) its local counsel in Raleigh, North Carolina, was unable to take this case; 2) efforts to retain the Sierra Club Defense Fund were unsuccessful; and 3) the nearest counsel with the requisite expertise in complex environmental litigation and the willingness to forgo compensation temporarily and perhaps permanently, was in Washington, D.C." *Id.* at 318.

A more recent example can be found in this court's decision in *McCollum* v. *Sealy*, No. 5:15-CV-00451-BO, 2021 WL 10319395 (E.D.N.C. Nov. 5, 2021). There, the district court applied Washington, D.C. rates to a fee petition after concluding that there were no attorneys in the local market who were able to provide the necessary legal services. In that case, the plaintiff's

guardian ad litem searched for "counsel within this district who could undertake this complex civil rights action, with particular focus on their having sufficient resources to handle an upcoming appeal and possibly a subsequent trial." *Id.* at *3. But during his search, "he encountered law firms with a conflict of interest as well as preexisting commitments which prevented them from taking this case." *Id.* And he found "that some large firms in this area which would have had adequate resources typically represent defendants in civil rights cases and were unwilling to represent plaintiffs." *Id.* In the end, the guardian ad litem retained a Washington, D.C. law firm to represent the plaintiff, and those attorneys were allowed to recover fees based on an hourly rate that reflected the Washington, D.C. legal market instead of the local one. *Id.*

HRDC has established that it could not retain local counsel who had proficiency in litigation involving First Amendment censorship in prisons; who had the willingness to take on the case, without assurances of compensation; and who had the resources to litigate this case. In light of that reality, it acted reasonably in selecting its counsel. So given the record, the court finds it appropriate to apply hourly rates based on the Washington, D.C. legal market instead of the market in which this court sits.

> **b)  Rates**

Having determined the relevant community, the court must calculate the reasonable hourly rates for the attorneys. Generally, the best indicator of the market hourly rate is an attorney's actual hourly rate at which he bills and collects fees from clients. *See EEOC* v. *Accurate Mech. Contractors, Inc.*, 863 F. Supp. 828 (E.D. Wis. 1994) (attorney's standard hourly rate is best measure of attorney's reasonable hourly rate for awarding attorney's fees in connection with motion to compel discovery).

HRDC's attorneys from Wiley Rein do not seek to have the court apply their regular hourly rate. Instead, they ask the court to apply lower rates based on the Laffey Matrix. The Laffey Matrix is a fee matrix describing "averag[e] rates for attorneys at different experience levels" in Washington, D.C. *See Urb. Air Initiative* v. *EPA*, 442 F. Supp. 3d 301, 322 (D.D.C. Feb. 27, 2020). Based on the level of experience of the Wiley Rein attorneys involved here, the Laffey Matrix suggests the following hourly rates:

- Meltzer $829.00
- Blain $508.00
- Bouboulis $413.00

*Id*. HRDC argues that these figures are reasonable rates that represent a middle ground between Wiley Rein's higher hourly rates and the lower rates for litigation in eastern North Carolina.

HRDC's in-house counsel suggests that the court apply the following hourly rates:

- Hurst $500.00
- Fischbein $450.00
- Stark $400.00

D.E. 70–2. These rates fall well-below the relevant rates for Washington, D.C. and, while at the high end of local rates, are similar to rates charged by attorneys in eastern North Carolina.

The applicable lodestar factors support the reasonableness of these rates. HRDC has submitted declarations discussing the experience and abilities of the attorneys working on this case. The lead Wiley Rein attorney, Ari Meltzer, has over a decade of legal experience, advises clients on First Amendment matters, and has extensive litigation experience in state and federal courts. First Meltzer Dec. ¶ 1. The other Wiley Rein attorneys assigned to the case have less experience than Meltzer and do not appear to focus on First Amendment law. *Id.* ¶¶ 5, 6. But based

on the record, the court concludes they have the credentials and experience to justify the rates they seek. *Id.* ¶¶ 5, 6.

The court reaches the same conclusion about the rates sought by HRDC's in-house legal staff. Although HRDC provided limited information about its staff, the information it did provide is undisputed. So the court accepts HRDC's representation that its in-house staff is made up of "highly qualified attorneys and paralegals who are trained in First Amendment and due process litigation against prisons and jails" as well as several other specialized areas. Wright Dec. ¶ 8, D.E. 74–1. So the court concludes that their proposed rates, which are substantially lower than those for private counsel, are reasonable.

HRDC's submissions also demonstrate the market rates for this type of litigation in the Washington, D.C. area, with adjustments to represent fees in eastern North Carolina. First Meltzer Dec. ¶¶ 6–9. And they include the billing records for Hurst, Meltzer, and their associates. *Id.* HRDC's attorneys have thus shown that its rates are consistent with the prevailing market rate for similar work. Thus, the court finds the proposed hourly rates to be reasonable.

NCDAC's responds that the hourly rates sought by HRDC's attorneys exceed the rates awarded by this court in other cases. This is true. But NCDAC has not shown that any of those other cases involved hourly rates based on the Washington, D.C. legal market. Nor has it argued that the rates sought by HRDC's attorneys differ from hourly rates charged in that market.

To the contrary, this court's decision in *McCollum*, in which the court applied Washington, D.C. rates, supports HRDC's proposed hourly rates. In that case, the court applied "hourly rates in the amount of $920–984 for partners, $424–744 for associates, and $292 for paralegal work." *McCollum*, 2021 WL 10319395, at *3. So NCDAC's argument on this point is unpersuasive.

NCDAC next attempts to persuade the court to apply a lower hourly rate based on the rate paid to court-appointed attorneys in federal criminal matters. The Department makes no attempt at all to explain why that rate is relevant to determining the appropriate compensation rate for privately retained counsel or in-house counsel in a federal civil rights claim. So this argument is also unpersuasive.

Having considered the relevant factors and the arguments of the parties, the court concludes the hourly rates sought by HRDC's attorneys are reasonable and reflect the prevailing market rate in Washington, D.C. for a similar work.

## 2.    Reasonable Hours Expended

Next the court considers the hours that should be part of the reasonable fee calculation. To meet its burden on this issue, a fee applicant must submit billing records that contain "sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Hensley* v. *Eckerhart*, 461 U.S. 424, 441 (1983) (Burger, C.J., concurring). If an attorney submits a request made up of "vague task entries or block billing," the court may exclude these entries from the fee award. *Two Men & A Truck/Intern., Inc.* v. *A Mover Inc.*, 128 F. Supp. 3d 919, 925–26 (E.D. Va. 2015). After receiving the records, the court will independently review them to ensure their reasonableness as well as ensure that the applicant is not compensated for "excessive, redundant, or otherwise unnecessary work." *Rivers* v. *Ledford*, 666 F. Supp. 2d 603, 606 (E.D.N.C. 2009) (citing *Trimper* v. *City of Norfolk*, 846 F. Supp. 2d 1295, 1307 (E.D. Va. 1994)).

In this case, the factors relevant to the reasonable number of hours expended include the time spent on the matter; the skill required to address the questions; the experience, reputation, and ability of counsel; and the novelty and difficulty of the issues. The motion requests that the court

award HRDC $60,160 for its fees. D.E. 70 at 1. This sum includes $36,660 for the motion to compel and the second Rule 30(b)(6) deposition and $23,500 to prepare the fee petition. D.E. 70–2 ¶ 8.

HRDC supplemented these claims with additional hours in replying to Defendants' opposition to the fee request:

- Meltzer          9.4 hours          $7,792
- Hurst            25 hours           $12,500

The fee award here covers three general areas: HRDC's motion to compel, preparing for and taking the second Rule 30(b)(6) deposition, and the fee petition.

It cannot be said the motion to compel involved novel issues or that it took an exceptionally high level of skill to address those issues. The impropriety of the actions by NCDAC and its attorney were obvious and clearly violated the Federal Rules.

But given the circumstances, it was necessary for HRDC to pursue the motion. Having reviewed the billing records, the court concludes that the time spent on that motion were reasonable and appropriate given the issues involved.

HRDC's attorneys also spent a reasonable amount of time preparing for and taking the second Rule 30(b)(6) deposition. As previously noted, prison-related First Amendment litigation is a specialized area of the law. So it involves a greater level of skill and more novel issues than other areas of the law. And the costs related to the second deposition were increased by NCDAC's failure to properly prepare its designee for the second deposition. That failure required HRDC to resort to written questions to get the information it sought. So the court concludes that the time spent related to the second Rule 30(b)(6) deposition was reasonable and appropriate given the issues involved.

The court reaches a different conclusion about the amount of hours spent on the fee petition. Defendants maintain that Hurst's efforts on the fee petition, totaling about 70 hours, are excessive given the routine nature of the work. So Defendants request that the court limit Hurst's work on the fee petition to 15 hours.

An attorney may recover for time "spent defending [an] entitlement to attorney's fees[.]" *See Trimper* v. *City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995) (internal citation omitted). It is "within the district court's discretion to determine exactly what amount would compensate the party sufficiently for the time spent on the fees phase of a lawsuit." *Id.* The Fourth Circuit has no steadfast rule or practice capping the amount of fees awarded for preparing a fee petition. *Doe* v. *Alger*, No. 5:15-CV-35, 2018 WL 4659448, at *16 (W.D. Va. Jan. 31, 2018), *adopted in part, rejected in part*, 2018 WL 4655749 (W.D. Va. Sept. 27, 2018). But it has found that fees recoverable for preparing and defending a fee petition may be limited. *See McAfee* v. *Boczar,* 738 F.3d 81, 86 n.3 (4th Cir. 2013), *as amended* (2014) (affirming the reduction to $10,000 for a request of over $29,000 for preparing a fee petition); *Spell*, 852. F.2d at 770 (imposing a seventy percent reduction "to the simply incredible 64.6 hours that counsel contend in their supplemental motion they spent preparing the present fee petition"). And it has affirmed a district court's determination limiting the sums accrued in preparing the fee petition to no more than "20 percent of the fees incurred in the merits portion of the lawsuit." *Trimper*, 58 F.3d at 77.

HRDC contends that Hurst spent 47 hours to prepare the fee petition. First Hurst Dec. ¶ 8, D.E. 70–2. Attorneys spent the rest of the claimed time—76 hours—working on the substantive issues of the motion to compel and for sanctions. *Id.* The reply to Defendants' opposition to the fee petition required about 9 hours by Meltzer and another 25 hours from Hurst.

15

The time spent on the fee petition exceeds what the court considers a reasonable amount of time for that effort. The initial fee preparation represents almost 40% of the attorneys' work. When accounting for the extra hours in the supplemental motion, the time spent on the fee petition is over 51% of the hours HRDC included in its petition.

As a result, the court will reduce the hours Hurst spent on the fee petition to an amount equal to 20% of the hours expended on pursuing the motion to compel and the issues related to the second Rule 30(b)(6) deposition. *See Trimper*, 55 F.3d at 77. This reduces his compensable hours from 72 to 15.2.

So overall, the court finds that HRDC may recover its fees for all the time sought except for 56.8 hours of time spent on the fee petition.

### a) Defendants Objections to Specific Entries

Defendants also dispute specific entries that HRDC seeks to recover. First, they challenge three entries as from Wiley Rein attorneys as non-compensable because they reflect a duplication of efforts.

- 1/9/2023      Amanda Blain      0.5 hours
- 1/25/2023      Ari Meltzer      1.4 hours
- 4/28/2023      Ari Meltzer      0.8 hours

It objects to four entries for "internal conference with co-counsel" claiming such work is unrelated to the litigation.

- 12/23/2022      Amanda Blain      0.3 hours
- 4/28/2023      Amanda Blain      0.2 hours
- 1/6/2023      Ari Meltzer      1.6 hours
- 12/30/2022      Scott Bouboulis      0.1 hours

And Defendants challenge one entry as insufficiently specific.

- 4/24/2023      Hasfa Nadeem      1.0 hours

16

Yet HRDC maintains that these entries reflect compensable work. It expounds on the billing entries to demonstrate that there was no duplication of effort.

First, Blain's January 2023 entry for 0.5 hours related to work to "Finalize Motion to Compel Second Deposition and for Sanctions; draft proposed order re same; file same." D.E. 74 at 10. HRDC explains that Blain recorded time to finalize a last draft of the motion to compel and supporting memorandum four days earlier. On January 9, 2023, she entered a small amount of time to finalize the motion for the court, draft a proposed order, and file the documents. So there is no duplication of effort.

Second, Meltzer's entry later that month for 1.4 hours was to "Revise and edit opposition to motion for extension and supervise filing of same." D.E. 74 at 12–13. A day earlier, Meltzer spent time analyzing Defendants' untimely motion for additional time and to draft a pleading opposing that request. On January 25, 2023, he recorded additional time to revise the opposition document. HRDC maintains that Meltzer spent 2.8 hours to draft and review its opposition to the request for an extension of time, which was reasonable. The court agrees that this entry does not record duplicative work.

And third, Meltzer's April 2023 entry for 0.8 hours was to "Review and edit [the] second set of interrogatories to NCDAC." D.E. 74 at 13. The work behind this entry involved reviewing and editing the written deposition questions that an associate (working at a lower hourly rate) initially drafted. HRDC contends that such review aligns with both industry practice and court standards.

The court finds no doubling with these entries. A partner spent less than an hour to review and revise an associate's work to prepare questions for a second deposition, caused by the Defendants' actions, which is reasonable and accepted practice.

17

Addressing the conferences, HRDC argues that Defendants objection is conclusory, and without additional clarification, offers no sound basis to reject these entries. It correctly notes that internal consultations among attorneys are not per se unreasonable. *See Prison Legal News* v. *Stolle*, 129 F. Supp. 3d 390, 401 (E.D. Va. 2015) (some time for appropriate strategic discussions is compensable). And HRDC's records reflect that the work performed was reasonable.

First, Blain's December 2022 entry for 0.3 hours is recorded as "Provide draft email to sent to government counsel to Mr. Meltzer." D.E. 74 at 10. This in not an internal conference, as Defendants claim, but the associate's time record for drafting an email to opposing counsel for the partner's signature.

Second, Blain's April 2023 entry for 0.2 hours was to "Email Mr. Meltzer with questions about Second Set of Interrogatories to Defendant NCDAC." D.E. 74 at 11. This record reflects the little time Blain drafted an email about "strategic discussions" for the written deposition questions. It is reasonable that the attorneys would prepare, review, and serve these interrogatories following the second deposition.

Third, Meltzer's January 2023 entry for 1.6 hours was work to "Revise and edit motion to compel and for sanctions re deposition; confer with A. Blain re same." D.E. 74 at 11–12. It is hard to conclude his work on the motion was unreasonable. And given that Blain was the main author of the motion, including the legal arguments and factual allegations, their discussion of the motion was sensible.

And fourth, Scott Bouboulis's December 2022 entry for 0.1 hours reflects "Correspondence w[ith] A. Mentzer re sanctions." D.E. 74 at 14. The minimal time Bouboulis recorded signals Bouboulis's assistance to Meltzer following the submission of HDRC's discovery dispute to the case manager that day. The court finds this entry reasonable.

18

Finally, HRDC neutralizes the Defendants' objection to Nadeem's 1.0 hour billed in April 2023. That work was to "Coordinate Legal Support plan for upcoming Second 30(b)(6) deposition." D.E. 74 at 13–14. HRDC notes that Nadeem readied for the remote deposition by preparing and arranging documents to display to the witness during examination. And this work replaced the costs of reproducing physical documents and travelling to North Carolina, as had been done on the initial 30(b)(6) deposition. So HRDC has shown that this entry sufficiently describes the work billed.

After reviewing the billing records, the court declines to exclude the eight entries that the Defendants challenged. And an examination of the other billing entries by HRDC's attorneys reveals they are reasonable and were incurred in making the motion. So the court declines to exclude any entries from the fee award.

### b) Defendants' Challenge to In-House Counsel

Defendants also object to all entries from HRDC's in-house counsel. They argue that two attorneys' roles reflect non-compensable work as liaisons.

The court addresses the first contention that it should exclude the work of two attorneys who acted merely as corporate representatives. A court may award in-house counsel attorney's fees for litigation related work that is otherwise compensable. *Prison Legal News*, 129 F. Supp. 3d at 397 (citing *Nat'l Wildlife Fed'n*, 859 F.2d at 319 (additional citation omitted)). But in-house counsel should receive no compensation for work "that ordinarily would be performed by outside counsel" and they act only as a liaison or corporate representative. *Lake Wright Hosp., LLC* v. *Holiday Hosp. Franchising, Inc.*, No. 2:07-CV-530, 2009 WL 4841017, at *10 (E.D. Va. Oct. 23, 2009). In-house counsel acts as only a liaison when she has no active participation in the case. S*ee*

19

*also Milgard Tempering, Inc.* v. *Selas Corp.*, 761 F.2d 553, 558 (9th Cir. 1985) (declining to award fees to in-house counsel).

A court may deny in-house counsel's fees associated with regular discussions about the status of the case, reviewing filings, or attending conferences and hearings. *See Lake Wright Hosp.*, 2009 WL 4841017, at *10. But in-house counsel is entitled to recover fees for performing substantive legal work "such as revising pleadings and motions and preparing for depositions." *See Hum. Rts. Def. Ctr.* v. *Sw. Va. Reg'l Jail Auth.*, No. 1:18-CV-00013, 2020 WL 4934603, at *4 (W.D. Va. Aug. 24, 2020).

Defendants argue that Hara Fischbein and Loree Stark were mere liaisons whose work on the motion to compel is non-compensable. So, NCDAC argues, the court should disallow their combined fee request of just over $11,000 for about 13 hours of work.

HRDC disputes the Defendants' characterization of the functions of Fischbein and Stark. Defendants offer no other evidence to support their contention that Fischbein and Stark served only as intermediaries. And their blanket objection pinpoints no specific time entries that could show the work of Fishbein and Stark duplicated the efforts of Wiley Rein attorneys.

A review of the entries by Fischbein and Stark show that their work was substantive. They reviewed filings, corresponded with Wiley Rein attorneys on the motion to compel, engaged in discussions about the Rule 30(b)(6) deponent, and approved draft submissions. D.E. 70–2. And they participated in litigation meetings, examined NCDAC's discovery responses, discussed deposition strategy, and settled deposition costs.

So the court finds that Fischbein and Stark actively participated in the case. They were more than mere liaisons because their contributions were substantive. And the court finds that the time spent by Fischbein and Stark was reasonable.

### 3. Exclusion of Unsuccessful and Unrelated Claims & Results Obtained

HRDC fully prevailed in its motion to compel and has only sought fees related as allowed by the court's order. Thus the court need not reduce the lodestar amount.

### 4. Total Fee Award

Combining the reasonable hours expended by the attorneys with the reasonable hourly rate adopted by the court results in a sum of $43,660. This figure represents $36,660 for attorneys' work on the merits of the matter plus $7,600 to prepare the fee petition.

### C. Costs

HRDC has requested costs of $1,226 and submitted an invoice detailing those expenses. D.E. 70–1 at 8. Defendants do not challenge that figure. So the court will allow HRDC to recover this amount.

This addition brings HRDC's total award to $45,846.

## III. Conclusion

The court grants HRDC's motion for attorneys' fees and costs (D.E. 70) and denied its supplemental motion (D.E. 73). Defendants are direct to pay $45,846 to HRDC within 14 days of entry of this order.

Dated:  November 30, 2023

_Robert T Numbers II_

Robert T. Numbers, II
United States Magistrate Judge